**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

|  |  |  |
|---|---|---|
| ERIC ANTON BALKIN, | ) ) | |
| Movant, | ) ) | |
| | ) | Cv. No. 2:13-cv-02799-JPM-dkv |
| v. | ) | Cr. No. 2:04-cr-20140-JPM-1 |
| | ) | |
| UNITED STATES OF AMERICA, | ) ) | |
| Respondent. | ) ) ) | |

**ORDER TO MODIFY THE DOCKET,
DENYING MOTION PURSUANT TO 28 U.S.C. § 2255,
DENYING CERTIFICATE OF APPEALABILITY,
CERTIFYING THAT AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH,
AND DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

Before the Court is a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("§ 2255 Motion") filed by Movant, Eric Anton Balkin, Bureau of Prisons register number 19570-076, who is currently incarcerated at the Federal Correctional Institution Gilmer in Glenville, West Virginia. (§ 2255 Mot., *Balkin v. United States*, No. 2:13-cv-02799-JPM-dkv (W.D. Tenn.), ECF No. 1.)[1] For the reasons stated below, the Court DENIES the § 2255 Motion.

**I. PROCEDURAL HISTORY**

**A. Criminal Case Number 04-20140**

On March 17, 2004, a federal grand jury returned a three-count indictment charging that: on or about January 14, 2004, (1) Balkin and five others robbed American Loan Company, 2825

---

[1] The Clerk is directed to modify the docket to reflect Movant's current address, which was obtained from the BOP's Inmate Locator, http://bop.gov/inmateloc, and to mail a copy of this order and the judgment to Movant at that address.

South Mendenhall, Memphis, Tennessee, in violation of 18 U.S.C. § 1951; (2) knowingly used and carried a firearm during the robbery, in violation of 18 U.S.C. 924(c); and (3) conspired with each other to rob American Loan Company, in violation of 18 U.S.C. § 1951. (Indictment, *United States v. Balkin*, No. 2:04-cr-20140-JPM-1 (W.D. Tenn.), ECF No. 1.) The factual basis for the charges is stated in the presentence report ("PSR"):

**The Offense Conduct**

4. According to the investigative file on January 14, 2004 at approximately 9:40 a.m., the American Loan Company located at 2825 South Mendenhall was robbed. Three males entered the store, with one carrying a black sports type bag containing a small guitar. The male carrying the bag[] took the guitar to the sales counter and told the employee that he wanted to pawn the guitar. The employee, Dan Gaia, surveyed the guitar and noticed that the bridge on the guitar was damaged. Gaia informed the male that the guitar was not worth anything. At that time, the male produced a gun and said "give me the money". The other two males also pulled out guns and told the customers in the store to get on the floor. One of the robbers stayed on the floor area with the customers while the other two robbers loaded bags and pillowcases with money, guns, and jewelry. One of the robbers demanded more money and grabbed employee Vickie Fletcher by the hair and began pulling her around demanding that she open the safe. When Fletcher did not open the safe, the robber put the gun to her head and threatened her, at which time, Fletcher opened the safe, took out $13,585, and gave it to the robber. The robber then struck Fletcher with his fist and sprayed mace in her face. Another robber ordered employee, codefendant, Nicholas Martin, to open the jewelry case and put the jewelry into a pillowcase. The robber then went to Gaia and struck him in the head with a pistol and sprayed mace in his face. Employee Mildred Krasner was in the office and saw what was happening. She called 911 and hid under her desk. After the robbers obtained the money and jewelry from the safe, they all left with the third person carrying the weapons taken during the robbery. Two of the robbers left in a burgundy Toyota Camry, traveling at a high rate of speed. The third robber, who was carrying the guns, was left behind. The third robber was later identified as the codefendant, Michael Dinkins.

. . . .

6. A police officer was across the street when the robbery call was dispatched. This officer observed two males come out of American Loan Company and get into a burgundy Toyota Camry with no tags. The

2

officer followed the vehicle which was occupied by three males to 2944 Castleman. The officer got all three males out of the vehicle at gun point and waited for back up. Money, jewelry, and the VCR which contained the surveillance tape from the store were recovered from the car. One male identified as defendant, **Eric Balkin**, seated in the front seat on the passenger side of the Camry, was clutching a Smith & Wesson handgun in his waist band. The handgun had 4 live rounds and one spent round. **Balkin** was wearing a jacket which contained $1,920 in cash and a large amount of gold necklaces. The other two males in the vehicle were identified as codefendants, Martrell Harris, who was the driver of the Camry, and Christopher Kelly, a backseat passenger in the Camry on the driver's side. The three individuals were placed under arrest and taken into custody.

. . . .

9. The following property taken during the robbery was returned to store employee, Dan Gaia:
   - 44 guns (valued at $18,628.70)
   - $13,585 cash
   - 7 trays of rings and 2 bags of necklaces which included:
     - 119 gold chains (valued at $17,170)
     - 11 gold watches (valued at $2,800)
     - 215 men's rings (valued at $38,840)
     - 431 ladies['] rings (valued at $75,239.90)
   - VCR with tape (no value)
   - 2 pair[s] of hand cuffs (no value)
   - 1 security badge (no value)

   **Total value of merchandise taken $166,263.60**

10. The investigation revealed that the robbery was planned in advance by codefendants Anthony Bernard Mack and Nicholas Martin, an employee of American Loan Company. It was discovered that the robbery had been planned for approximately one week in advance, with Mack coming into the store to find out from Martin the location of surveillance cameras and alarm buttons. Mack was to get information from Nicholas on the items that were to be taken, draw a sketch of the store to determine how many people were needed, recruit the individuals, and supply the vehicle. This information was corroborated by the other codefendants.

(PSR ¶¶ 4, 6, 9-10.)

Pursuant to a written plea agreement, Balkin appeared before the Court on December 21, 2004, to plead guilty to Counts One and Two of the Indictment. (Min. Entry, *United States v.*

3

*Balkin*, No. 2:04-cr-20140-JPM-1 (W.D. Tenn.), ECF No. 121; Plea Agreement, *id.*, ECF No. 122.) At a hearing on April 15, 2005, the Court sentenced Balkin to a total term of imprisonment of 176 months, to be followed by a three-year period of supervised release. (Min. Entry, *id.*, ECF No. 167.)[2] Count Three was dismissed. (Order, *id.*, ECF No. 168.) Judgment was entered on April 18, 2005. (J. in a Criminal Case, *id.*, ECF No. 169.) The Sixth Circuit affirmed Balkin's conviction and sentence. *United States v. Balkin*, No. 05-5603 (6th Cir. Apr. 18, 2006).

   **B.   Case Number 13-2799**

On October 10, 2013, Balkin filed a *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("§ 2255 Motion"). (§ 2255 Mot., *Balkin v. United States*, No. 2:13-cv-02799-JPM-dkv (W.D. Tenn.), ECF No. 1.) This motion presents the following issue: that Balkin's mandatory minimum sentence on Count Two, for violation of 18 U.S.C. § 924(c), was improperly increased in light of the Supreme Court's decision in *Alleyne v. United States*, 133 S. Ct. 2151 (2013). (*Id.* at 5.) On June 23, 2016, Balkin filed a supplemental memorandum, asserting that he is entitled to relief in light of *Johnson v. United States*, 135 S. Ct. 2551 (2015).

---

[2] The 2004 edition of the *Guidelines Manual* was used to calculate Balkin's sentencing range. (PSR ¶ 14.) On Count One, pursuant to § 2B3.1(a) of the United States Sentencing Guidelines ("U.S.S.G."), the base offense level for robbery is 20. (*Id.* ¶ 15.) Balkin received a two-level enhancement because a victim sustained bodily injury, U.S.S.G. § 2B3.1(b)(3)(A), a two-level enhancement because persons were physically restrained to facilitate commission of the offense, U.S.S.G. § 2B3.1(b)(4)(B), a one-level enhancement because firearms were taken, U.S.S.G. § 2B3.1(b)(6), and a two-level enhancement because the loss exceeded $50,000, but was less than $250,000, U.S.S.G. § 2B3.1(b)(7)(C), resulting in an adjusted offense level of 27. (*Id.* ¶¶ 16-19, 23.) Balkin received a three-level reduction for acceptance of responsibility, U.S.S.G. § 3E1.1, resulting in a total offense level of 24. (*Id.* ¶ 26.) On Count Two, pursuant to U.S.S.G. § 2K2.4(b), the guideline sentence is the minimum term of imprisonment required by statute. (*Id.* ¶ 27.) In Balkin's case, this minimum is seven years. (*Id.*; *see also* 18 U.S.C. § 924(c).) Given his criminal history category of V, the guideline sentencing range was 92-115 months plus a minimum of seven years to be served consecutively on Count Two. (*2004 Guidelines Manual*, Ch. 5, part A – Sentencing Table; PSR ¶ 34.)

## II.   LEGAL STANDARDS

Pursuant to 28 U.S.C. § 2255(a),

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

"A prisoner seeking relief under 28 U.S.C. § 2255 must allege either: '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003)).

"[A] § 2255 motion 'is not a substitute for a direct appeal.'" *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013) (quoting *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003)). "[N]onconstitutional claims that could have been raised on appeal, but were not, may not be asserted in collateral proceedings." *Stone v. Powell*, 428 U.S. 465, 477 n.10 (1976). "Defendants must assert their claims in the ordinary course of trial and direct appeal." *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996).

After a § 2255 motion is filed, it is reviewed by the Court and, "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts ("§ 2255 Rules"). "If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other

response within a fixed time, or to take other action the judge may order." *Id.* The movant is entitled to reply to the Government's response. Rule 5(d), § 2255 Rules. The Court may also direct the parties to provide additional information relating to the motion. Rule 7, § 2255 Rules.

## III. ANALYSIS

### A. Claim Under *Alleyne v. United States*

Balkin asserts that he is entitled to relief under *Alleyne*, which was decided by the Supreme Court in 2013. (§ 2255 Mot. at 13, *Balkin v. United States*, No. 2:13-cv-02799-JPM-dkv (W.D. Tenn.), ECF No. 1.) In *Alleyne*, the Supreme Court held that "[f]acts that increase the mandatory minimum sentence are therefore elements and must be submitted to the jury and found beyond a reasonable doubt." 133 S. Ct. at 2158. Applying this standard, the Supreme Court concluded that a finding that a defendant charged under 18 U.S.C. § 924(c) "brandished" a firearm, which triggers a mandatory minimum sentence of seven years, must be submitted to the jury. *Id.* at 2163-64.

The Sixth Circuit, however, has declined to apply *Alleyne* retroactively. *See, e.g.*, *In re Mazzio*, 756 F.3d 487, 491 (6th Cir. 2014) ("We now hold that *Alleyne* does not apply retroactively to cases on collateral review."). "[W]hen a federal criminal defendant takes a direct appeal to the court of appeals, his judgment of conviction becomes final for § 2255 purposes upon the expiration of the 90-day period in which the defendant could have petitioned for certiorari to the Supreme Court, even when no certiorari petition has been filed." *Sanchez-Castellano v. United States*, 358 F.3d 424, 426-27 (6th Cir. 2004). Balkin did not file a petition for writ of certiorari, and thus, his conviction became final on July 17, 2006, ninety days after the Sixth Circuit affirmed his conviction and sentence. *See* U.S. Sup. Ct. R. 13(3). Thus, because the conviction from which Balkin is appealing was final before the Supreme Court

6

issued the *Alleyne* decision, the Court need not assess whether Balkin is entitled to relief under *Alleyne*.[3]

### B. Claim under *Johnson v. United States*

Balkin also asserts that he is entitled to relief in light of *Johnson v. United States*, 135 S. Ct. 2551 (2015). (Suppl. Mem., *Balkin v. United States*, No. 2:13-cv-02799-JPM-dkv (W.D. Tenn.), ECF No. 2.) This contention is without merit.

---

[3] The Court also observes that Balkin's motion would ordinarily be time-barred. The period of limitation under 28 U.S.C. § 2255 is one year. 28 U.S.C. § 2255(f).

The limitation period shall run from the latest of—

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.* In Balkin's case, the applicable subsections are 28 U.S.C. § 2255(f)(1) and (3).

As discussed above, Balkin's conviction became final on July 17, 2006. *See supra* p. 6. Balkin then had one year in which to file a timely § 2255 motion, but he filed the instant motion in October 2013, approximately seven years after his conviction became final. Balkin has not asserted a right newly recognized by the Supreme Court and made retroactively applicable, *see* 28 U.S.C. § 2255(f)(3), and accordingly, his claim would ordinarily be time-barred. Nevertheless, because *Alleyne* does not apply retroactively and Balkin is not entitled to relief under *Alleyne*, the Court need not *sua sponte* consider the timeliness of Balkin's motion. *See Day v. McDonough*, 547 U.S. 198, 209 (2006) (holding that district courts may consider *sua sponte* the timeliness of § 2255 motions and § 2254 petitions for relief, but that "before acting on its own initiative, a court must accord the parties fair notice and an opportunity to present their positions").

The ACCA provides that:

> In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g).

18 U.S.C. § 924(e)(1).

"Violent felony" is defined by the ACCA as a felony "that (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B).

The Supreme Court held in *Johnson* that the residual clause of the ACCA, encompassing all felonies that "involve[] conduct that presents a serious potential risk of physical injury to another," 18 U.S.C. § 924(e)(2)(B)(ii), was unconstitutionally vague and that the application of the residual clause to increase a sentence violated the Due Process Clause. 135 S. Ct. at 2557. The *Johnson* decision applies only to the residual clause and "does not call into question application of the Act to the four enumerated offenses, or the remainder of the Act's definition of a violent felony." *Id.* at 2563. The Supreme Court has made *Johnson*'s rule retroactive to cases on collateral review. *Welch*, 136 S. Ct. at 1265 ("*Johnson* is thus a substantive decision and so has retroactive effect . . . .").

In the instant case, Balkin was not sentenced as an armed career criminal under the ACCA, nor was his sentence enhanced for prior convictions for violent felonies under the parallel residual clause in the United States Sentencing Guidelines. Accordingly, the holdings in *Johnson* and *Welch* have no bearing on Balkin's sentence.

The motion, together with the files and record in this case "conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also* Rule 4(b), § 2255 Rules. The Court finds that a response is not required and that the motion may be resolved without an evidentiary hearing. *See Smith v. United States*, 348 F.3d 545, 550 (6th Cir. 2003); *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999). Movant's conviction and sentence are valid and, therefore, his § 2255 Motion is DENIED.

## IV. APPEAL ISSUES

Twenty-eight U.S.C. § 2253(a) requires the district court to evaluate the appealability of its decision denying a § 2255 motion and to issue a certificate of appealability ("COA") "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also* Fed. R. App. P. 22(b). No § 2255 movant may appeal without this certificate. The COA must indicate the specific issue(s) that satisfy the required showing. 28 U.S.C. § 2253(c)(3). A "substantial showing" is made when the movant demonstrates "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)); *see also Henley v. Bell*, 308 F. App'x 989, 990 (6th Cir. 2009) (per curiam) (same). A COA does not require a showing that the appeal will succeed. *Miller-El*, 537 U.S. at 337 ("[A] court of appeals should not decline the application for a COA merely because it believes the applicant will not demonstrate an entitlement to relief."); *Caldwell v. Lewis*, 414 F. App'x 809, 814-15 (6th Cir. 2011) (same). Courts should not issue a COA as a matter of course. *Miller-El*, 537 U.S. at 337 ("Our holding should not be misconstrued as directing that a COA always must issue.").

There can be no question that the issues raised in Balkin's § 2255 Motion are meritless for the reasons previously stated. Because any appeal by Balkin's on the issues raised in his § 2255 Motion does not merit further review, the Court DENIES a certificate of appealability.

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. §§ 1915(a)-(b), does not apply to appeals brought under § 2255. *Kincade v. Sparkman*, 117 F.3d 949, 951 (6th Cir. 1997). Rather, to appeal *in forma pauperis* in a § 2255 case, and thereby avoid the appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must obtain pauper status pursuant to Federal Rule of Appellate Procedure 24(a). *Id.* at 952. Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1). Rule 24(a) also provides, however, that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal *in forma pauperis*, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. *See* Fed. R. App. P. 24(a) (4)-(5).

In this case, for the same reasons the Court denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to Federal Rule of Appellate Procedure 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal *in forma pauperis* is DENIED.[4]

**IT IS SO ORDERED**, this 23rd day of June, 2016.

/s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT JUDGE

---

[4] If Balkin files a notice of appeal, he must also pay the full $505 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty days.